IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

GEORGE L. WADE, JR., THE ESTATE OF
GEORGE L. WADE, SR., DECEASED, AND
HIS HEIRS AT LAW                                                    PLAINTIFFS

v.                                                            CAUSE NO. 2:16cv47 KS-MTP

DEMETRIUS BRELAND and NAROTTAM
HOLDEN, INDIVIDUALLY and JOHN DOES 1-10          DEFENDANTS

**MEMORANDUM BRIEF IN SUPPORT OF MOTION TO DISMISS
CLAIMS OF GEORGE WADE, JR. PURSUANT TO F.R.C.P. 37**

Defendants, Demetrius Breland and Narottam Holden, submit this Memorandum Brief in Support of their Motion to Dismiss Claims of George Wade, Jr. Pursuant to F.R.C.P. 37, as follows:

## INTRODUCTION

Dismissal of George Wade, Jr.'s case with prejudice pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) and/or 37(c) is warranted due to his false discovery responses and false deposition testimony. This conduct demonstrates willfulness and bad faith on the part of the Plaintiff rather than his attorney. George Wade, Jr. allegedly injured his knee and ankle while being arrested by the Hattiesburg Police Department on April 16, 2013. Unbeknownst to Defendants, but well known to George Wade, Jr., he suffered from a serious pre-existing left knee and ankle injury. He failed to identify his prior knee and ankle problems in his sworn discovery responses in response to a clear and unambiguous interrogatory seeking identification of prior injuries and treatment. When given an opportunity to correct the false discovery response, he chose to double down by providing false deposition testimony. Defendants have

1

been prejudiced by this false testimony, as even now they do not know if George Wade, Jr. underwent additional medical treatment for these injuries, and if so, when and where. Moreover, discovery has been substantially completed, and the defendants should not be required to incur additional expenses and delay of reconducting discovery regarding the details of George Wade, Jr.'s pre-existing medical conditions in light of prior efforts being stonewalled. Pursuant to Rule 37 of the Federal Rules of Civil Procedure, George Wade, Jr.'s claims should be dismissed.

## FACTS

Plaintiffs, George Wade, Jr. and The Estate of George Wade, Sr., filed this suit seeking damages for personal injuries allegedly caused during their arrest on April 16, 2013. Plaintiffs filed their Complaint for damages in this Court on April 13, 2016, asserting claims pursuant to 42 U.S.C. § 1983. Plaintiffs state within their Complaint that "Officer Breland kicked George Wade, Jr. on his leg...[and a]s a result of these actions, George Wade, Jr. suffered a broken leg and broken foot." Exhibit "A."

On January 13, 2017, Defendants propounded their First Set of Interrogatories and Requests for Production of Documents to Defendants. [Docs. #18 and #19]. In view of Plaintiffs' claimed personal injuries, Defendants requested information on the medical history of George Wade, Jr., as follows:

> INTERROGATORY NO. 10: Please state the name, address, and telephone number of each and every doctor, hospital, or other medically trained person or institution which provided medical or psychiatric treatment to you during the ten (10) years prior to the incident alleged in your complaint, and state when the services were rendered, the nature of the condition or illness and whether you have fully recuperated.

George Wade, Jr.'s sworn interrogatory response was as follows:

2

> **RESPONSE**: Other than the treatment for the injuries suffered in the complained of incident herein, George Jr. experienced heart problems on or about 2001-2002. He was treated at Forrest General Hospital in Hattiesburg. He does not remember the name of the treating physician. I do not recall any other medical treatment.

Exhibit "B," Plaintiffs' Response to Defendants' Interrogatories.

On July 24, 2017, Defendants took the deposition of George Wade, Jr. After being sworn in, George Wade, Jr. was asked a series of questions about the subject incident and his claim for injuries.

> Q. After you told him you weren't going to let your kid run your household, what happened?
> A. That's when he kicked me.
>
> Q. He just kicked you out of the blue?
> A. Just out of the blue and nothing else just kicked me on my leg, grabbed me, throw me to the ground and smashed my face into the concrete and put the handcuffs on me.
>
> Q. Where did he kick you?
> A. On my left leg.
>
> Q. Where at on your left leg?
> A. On the side where my kneecap is.
>         *   *   *
> Q. Did you say anything to him while this was happening?
> A. I couldn't nothing. I was just hollering.
>
> Q. What were you hollering?
> A. Oh, oh, my leg is broken. It's broke. Like that.
>
> Q. Referring to your left leg where he kicked you?
> A. Yes, sir.
>         *   *   *
> Q. All right. What was it that broke your leg?
> A. It had to be the kick.
>         *   *   *
> Q. All right. Other than the surgery on your leg, did you have any kind of treatment for anything else?

3

> A. Yeah. After I'd say about a good two months after feeling come back into my leg, and I started trying to stand up on it. As I started standing up on it, I discovered that around my ankle part was hurt bad and I couldn't put no pressure on my feet. So after that I went back to Southern Bone & Joint and they ran an MRI on my feet and discovered my feet was also broke and that's when I got the boot to put on my feet.
>
> Q. Where was your foot broke?
> A. Around up around my ankle part or right there.
>
> Q. On your left leg?
> A. Yes, sir. The same leg.
>
> Q. All right. When you say that you were kicked where were you kicked? Where was contact made?
> A. Like right here.
>
> Q. You're pointing to your left knee?
> A. Yes, sir. Right there.

Exhibit "C," Deposition of George Wade, Jr. at 59, 62-63 and 105-106.

George Wade, Jr. was also asked a series of questions about his prior medical history and medical treatment:

> Q. All right. I am going to ask you about your medical history because there's a claim for physical injuries so I'm going to ask you about your medical history. Have you ever had any type of car accident in the past?
> A. No, sir.
>
> Q. Never been involved in a car accident?
> A. No, sir.
>
> **Q. All right. Have you ever been injured in any kind of way?**
> **A. No, sir.**
> \* \* \*
> Q. All right. When was the last time you went to Forrest General Hospital?
> A. I believe it was probably 2015.

4

Q. What was the reason for the visit?
A. Yes. I broke my – back of my finger.

Q. You pointed to your pinkie finger on your left hand?
A. Yes, sir.

Q. How did you do that?
A. I was moving some furniture outside and my hand hit against the wall of the door frame and it went – separated out and they said it broke.

Q. Any kind of surgery for that?
A. No, sir. Just put a cast on it.

**Q. All right. What about before that? Not considering this event we're here for, but what about before that?**
**A. No, sir.**

**Q. You haven't been to the doctor before that?**
**A. No, sir.**

\* \* \*

Q. And you went to see your doctor at Southern Bone & Joint?
A. Yes, sir.

Q. Where did you do physical therapy at?
A. Southern Bone & Joint.

Q. All right. Did you go anywhere else other than that?
A. No, sir. I went there for therapy and for the surgery.

Q. All right. Was there any other doctor you saw after that for your leg?
A. No. Dr. Nipper that was the same doctor.

Q. Okay. No other doctor?
A. No, sir,

**Q. Up to today have you seen any other doctor for your leg?**
**A. No, sir.**

5

*Id.* at 35-38 and 104-105.

George Wade, Jr. denied having any pre-existing medical conditions or medical treatment for his left knee and foot in both of his interrogatories and at his deposition. Accepting these responses as true, Defendants were caused to believe that George Wade, Jr. suffered no pre-existing condition and had not sought treatment for any related condition.

George Wade, Jr. sought medical treatment at Southern Bone and Joint following his arrest. In reviewing George Wade, Jr.'s medical records, Defendants learned that George Wade, Jr. was treated by Dr. John Kosko on or about April 18, 2013. Dr. Kosko reviewed radiological images of George Wade, Jr. and his interpretation of those images resulted in his opinion that George Wade, Jr. had "increased bone density within the proximital tibial metaphysis which likely represents old injury." Exhibit "D," Dr. Kosko medical record. Upon review of this isolated record, Defendants were still not aware of whether George Wade, Jr. had any pre-existing injuries, although this record indicated such may have existed.

On August 11, 2017, Defendants, through counsel, initiated a medical records request to Forrest General Hospital through a HIPAA compliant medical authorization for medical records of George Wade, Jr. Forrest General Hospital responded on August 11, 2017, and provided his records. Defendants learned for the first time through these records that George Wade, Jr. was injured in a fall on or about July 17, 2008. He sought treatment for pain in his left knee and ankle as a result of this fall. He reported pain, difficulty walking, swelling, and tenderness. Exhibit "E," Forrest General Hospital records of July 17, 2008. The areas of injury George Wade, Jr. complains of in his Complaint in this case are the exact same areas he previously sought treatment for at Forrest General Hospital on July 17, 2008.

The sworn discovery responses and deposition testimony of George Wade, Jr. are demonstrably false. George Wade, Jr. failed to reveal in his sworn discovery responses that he had any type of prior problem in his left knee or ankle, the areas of his body that he allegedly injured in this case. George Wade, Jr.'s knee surgery constitutes the vast majority of medical expenses in this case. These false discovery responses and subsequent testimony are a material issue in this case, and they were made willfully and in bad faith. Accordingly, pursuant F.R.C.P. 37, George Wade, Jr.'s Complaint should be dismissed as a sanction. Due to the nature of this misconduct and the fact that it falls squarely on Plaintiff, George Wade, Jr., as opposed to his lawyer, no lesser sanction will suffice.

Defendants have been materially prejudiced in their ability to prepare a defense in this case as a result of the untimely discovery of George Wade Jr.'s prior medical conditions. Defendants waited a long period of time for written discovery responses. The parties have already taken numerous depositions, including George Wade, Jr. and his wife Susa Wade. His prior treatment and injury were not known at the time of the depositions. This case has undergone substantial delays from the outset, including a four month delay from the time of the filing of the Complaint to the Magistrate Judge's Report and Recommendations [Doc. #4]. See also Amended Case Management Order extending deadlines [Doc. #24] and Order Granting Extension of Deadlines [Doc. #35].

## ARGUMENT

**A.** **Motion to Dismiss Standard under Rule 37.**

Sanctions for providing false and misleading information in discovery are addressed in Rule 37 of the Federal Rules of Civil Procedure. Case law refers to both Rule 37(b) and Rule 37(c).

Rule 37(b)(2)(A) states, in pertinent part, as follows:

**(b)    Failure to Comply with a Court Order**

(2)(A) If a party...fails to obey an order to provide or permit discovery...the court where the action is pending may issue further just orders. They may include the following:

...

(v) dismissing the action or proceeding in whole or in part.

Rule(c)(1)(C) states in pertinent parts, as follows:

**(c)    Failure to Disclose, to Supplement an Earlier Response, or to Admit.**

(1) If a party fails to provide information or identify a witness as required by Rule 26(a) or (e)...the court

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i) – (vi).

In determining whether the sanction of dismissal is justified under Rule 37, the Fifth Circuit Court of Appeals has established the following four factors: Whether

1) the conduct involved willfulness or bad faith;
2) the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions;
3) the other party's preparations for trial substantially prejudiced; and
4) the neglect is attributable to the client as opposed to the attorney.

*Rose v. Batson*, 765 F.2d 511 (5th Cir. 1985). While *Batson* dealt with a motion to dismiss arising out of both deposition testimony and failure to produce documents pursuant to a court order, the four *Batson* factors have been adopted by the Mississippi Supreme Court for use in the present context. *See, e.g., Pierce v. Heritage Properties, Inc.*, 688 So. 2d 1385 (Miss. 1997).

**B.    George Wade, Jr.'s Claims Must be Dismissed.**

George Wade, Jr. alleges that his primary injury, and the one for which most of his medical bills were incurred, is to his left knee and ankle. In his discovery responses, he stated under oath that he had no prior injuries to his left knee or ankle. As demonstrated in his medical

8

records attached to the Motion to Dismiss, this is blatantly false. When provided an opportunity to explain his responses at his deposition, George Wade, Jr. again denied any prior left knee or ankle injury under oath. This is not a matter of misunderstanding or forgetfulness but instead demonstrates willfulness and bad faith. George Wade, Jr.'s cavalier disavowal of his pre-existing left knee and ankle injury treatment show that he does not understand the solemn nature of these court proceedings and that his testimony works a fraud upon the court.

Dismissal is the only viable option at this late stage in the proceedings, as less drastic sanctions would excuse this conduct and will not adequately protect the integrity of these proceedings. It became clear during George Wade, Jr.'s deposition that the deception on his part was his alone, as he consistently maintained in the presence of his attorney that he has never suffered any prior left knee or ankle problems or had any type of prior traumatic injury. George Wade, Jr.'s bold repudiation of pre-existing injuries was done in order to further his own pecuniary interests in this lawsuit, and in doing so, undermined the integrity of the judicial process. Any sanction other than dismissal would allow this case to proceed to trial after the integrity of these proceedings have been significantly undermined.

Defendants have suffered prejudice due to George Wade, Jr.'s concealment of his prior medical conditions. It has incurred expenses in obtaining his voluminous medical records, only to find out that his claim of a clean medical history regarding his left knee and ankle is false. Even now, though, Defendants are still in the dark as to the details of the prior knee and ankle problems and treatments, since he had denied any such problems. Defendants would bear additional exceptional expenses in having to essentially restart discovery and relitigate the issues relating to these pre-existing conditions in face of the substantial delays that have already occurred in this case.

This case is similar to *Powell v. Southeast Foods, Inc.*, 2013 WL 2250246 (N.D. Miss. 2013) in which the plaintiff claimed personal injuries to her head, hip and shoulder from a slip and fall. Plaintiff maintained through discovery that she had never had pain in her shoulder. Defendants, however, proved these claims were false and that she suffered from pre-existing injuries. The Court found dismissal appropriate.

The Mississippi Supreme Court has utilized the Fifth Circuit *Batson* factors in dealing with Rule 37 Motions to Dismiss due to similar discovery misconduct. In *Pierce v. Heritage Properties, Inc.*, 688 So. 2d 1385 (Miss. 1997), the plaintiff gave false testimony regarding the existence of an eyewitness and, like here, did so on more than one occasion under oath. *Id.* at 1387. When another witness finally revealed her false testimony, the plaintiff testified that she did not intend to deceive the Court but instead did not want her parents to know that the witness was in her apartment on the night of the incident. *Id.* at 1388. The Mississippi Supreme Court applied *Batson* factors and dismissed the case with prejudice as a sanction. *Id.* at 1389, 1392. Important to the court was the pattern of false testimony. It cited *Smith c. Cessna Aircraft Co.*, for the proposition that "[a]n implicit condition in any order to answer an interrogatory is that the answer be true, responsive and complete. A false statement is in some ways worse than no answer, it misleads and confuses the party." 124 F.R.D. 103, 107 (D. Md. 1989). Due to the pattern of false testimony, the court dismissed the plaintiff's case with prejudice. *Id.*

So it is with the present case. George Wade, Jr. provided sworn interrogatory responses in which he identified prior medical problems but none related to his left knee or ankle. See generally Plaintiffs' Responses to Defendants' First Set of Interrogatories. Exhibit "B." There was no misunderstanding about the information being sought – the response was otherwise responsive, just false as to the prior knee and ankle injury. As pointed out by the Cessna Aircraft

Court, this was worse since it served to mislead and confuse. 124 F.R.D. at 107. If left to the Plaintiff, this material evidence would still be unknown to the Defendants.

The *Batson* factors were applied again by the Mississippi Supreme Court in the factually similar case *Scoggins v. Ellzey Beverage, Inc.*, 743 So. 2d 990 (Miss. 1999). The plaintiff in *Scoggins* was injured at a grocery store, and her pre-existing medical conditions were the subject of discovery. *Id.* at 991. The defendant requested in interrogatories that the plaintiff identify all prior injuries to the areas of her body that she claimed were injured in the subject accident. *Id.* The plaintiff denied any prior injuries to the part of her body that was allegedly injured at the grocery store, with the exception of identifying a minor injury almost 40 years earlier. *Id.* at 992. The plaintiff was then deposed, and she repeatedly testified that she had no prior problems to the areas of her body that were at issue in the lawsuit. *Id.* at 991-92. The defendant obtained medical records which revealed that, contrary to her testimony, the plaintiff suffered numerous medical problems relating to the areas that were injured in the accident. *Id.* at 992. The defendant filed a Motion to Dismiss pursuant to Mississippi Rules of Civil Procedure 37, and the trial court granted the Motion to Dismiss. *Id.* As it did in the *Pierce* case, the Mississippi Supreme Court utilized the Fifth Circuit's *Batson* factors in affirming the dismissal. *Id.* at 996-97. The court noted that the plaintiff "impeded the orderly administration of the judicial system and subverted the very reason for implementation of discovery rules…the defendant inquired good faith several times whether Mrs. Scoggins had any prior medical conditions that might bear on the question of the extent of her damages. Each time her answer under oath was in effect, 'No, nothing.'" *Id.* at 994. In citing other Fifth Circuit law, the Mississippi Supreme Court noted that "a trial is a proceeding designed to be a search for the truth." *Id.* (quoting *Sims v. ANR Freight Systems, Inc.*, 777 F. 3d 846, 849 (5th Cir. 1996)). "When a party attempts to thwart such a search, the courts

are obligated to ensure that such efforts are not only cut short, but that the penalty will be sufficiently severe to dissuade others from following suit." *Id.* at 995. After finding the false testimony was both willful, the court noted that lesser sanctions would not serve the deterrent purposes of Rule 37. *Id.* 994. If the case proceeded to trial and the plaintiff lost, then the defendant would have been in position of being compelled to file suit against her to recover any sanction since it was the plaintiff's misconduct, and not the misconduct of her attorney. *Id.* The same is plainly true here. The court further noted that if the plaintiff won and any sanctions were deducted from the award that justice would not have been done. *Id.* Since *Scoggins's* testimony regarding her medical history was directly contradicted by her medical records, dismissal was appropriate and the trial court's dismissal affirmed. *Id.* at 997.

Perhaps dismissal would not be warranted if there had been but one misrepresentation, especially if it was subject to a reasonable explanation. The same might be true if it appeared that the cause of the false testimony was "careless lawyering." See *Francis v. Colonial Freight Systems*, 2007 WL 1309076 (S.D. Miss. 2007). But that is simply not the case here. Only the Plaintiff was fully aware of his prior medical conditions. Gambling that no one else would find out about his pre-existing medical condition, he decided to roll the dice, blaming all of his problems on his arrest by Defendants. He apparently did not realize that the paper trail created with his prior treatment would ultimately come to light. The Fifth Circuit's *Batson* factors have each been met, making dismissal appropriate.

WHEREFORE, Defendants, respectfully request this Court grant this Motion to Dismiss Claims of George Wade, Jr. Pursuant to F.R.C.P. 37 and for such other relief as the Court may deem appropriate.

RESPECTFULLY SUBMITTED, this the 18th day of August, 2017.

/s/ Lane Dossett
L. CLARK HICKS, MSB No. 8963
R. LANE DOSSETT, MSB No. 102927
*Attorneys for Defendants*

HICKS LAW FIRM, PLLC
211 South 29th Avenue, Suite 201 (39401)
Post Office Box 13850
Hattiesburg, MS 39404-8350
Telephone: 601.544.6770
Facsimile: 601.544.6775
Email: clark@hicksattorneys.com
       lane@hicksattorneys.com

## CERTIFICATE OF SERVICE

I, undersigned counsel, do hereby certify that I have this day electronically filed the foregoing documents with the Clerk of the Court using the ECF system, which sent notification of such filing to all registered users, including, the opposing parties' attorney.

Dated: August 18th, 2017.

/s/ Lane Dossett
L. CLARK HICKS, MSB No. 8963
R. LANE DOSSETT, MSB No. 102927
*Attorneys for Defendants*