IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

GEORGE L. WADE, JR., THE ESTATE OF
GEORGE L. WADE, SR., DECEASED, AND
HIS HEIRS AT LAW                                                                PLAINTIFFS

v.                                                                                          CAUSE NO. 2:16cv47 KS-MTP

DEMETRIUS BRELAND and NAROTTAM
HOLDEN, INDIVIDUALLY and JOHN DOES 1-10                           DEFENDANTS

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, Demetrius Breland and Narottam Holden, file this Memorandum in Support of their Motion for Summary Judgment and state in support:

### FACTS

On April 16, 2013, Officer Demetrius Breland was dispatched to Plaintiffs' residence. The call for service concerned a domestic disturbance between George Wade, Jr., George Wade, Sr., and Susa Wade, Wade Jr.'s wife. Exhibit "A," Breland and Holden Narratives.

Officer Breland made contact with Wade Jr. outside the residence and attempted to obtain information from him. Exhibit "B" at 25-26, Breland Deposition. Wade Jr. refused to cooperate and resisted Officer Breland's efforts to separate him from a large crowd that had gathered nearby. *Id.* at 26-28. Officer Breland then attempted to escort Wade Jr. away, but Wade Jr. pulled away from him and assaulted him by shoving him. *Id.* As a result of this active physical resistance and assault, Officer Breland reacted as he was trained by performing a straight arm bar takedown to gain control over Wade Jr. and complete his arrest. *Id.* at 27-28.

As Officer Breland was attempting to handcuff Wade Jr., another male approached Officer Breland from behind, later identified as Wade Sr. He began grabbing and pulling at

1

Officer Breland and yelling at him to "get off my son." *Id.* at 28. Wade Sr. was ordered to step back multiple times, but he refused to comply. *Id.* Just as Officer Breland handcuffed both of Wade Jr.'s wrists he heard a female yell, "No, Papa. No, Papa." *Id.* Officer Breland turned around and saw Wade Sr. reaching in his waistband or pocket, which, taken together with the yelling, caused Officer Breland to believe Wade Sr. was attempting to retrieve a weapon. *Id.* at 28-29. Officer Breland pulled out his department issued gun and instructed Wade Sr. to get on the ground. *Id.* at 29. Wade Sr. refused to comply. Now seeing that Wade Sr. did not have a weapon, Officer Breland holstered his weapon and removed his chemical spray. Officer Breland grabbed Wade Sr.'s wrist to escort him to the ground, but Wade Sr. pushed him. Breland then attempted to spray Wade Sr., but it was ineffective. *Id.* at 29-36.

Wade Sr. bolted toward the front door of the house, and Officer Breland gave chase. *Id.* at 36. Officer Breland caught Wade Sr. as he entered into the bathroom. *Id.* at 36-37. Wade Sr. began assaulting Officer Breland by punching him numerous times in the chest. *Id.* at 38. Officer Breland attempted to gain control over him by delivering open hand strikes. *Id.* Officer Holden then arrived on the scene and assisted Officer Breland with placing Wade Sr. into custody. *Id.* at 42.

Wade Jr. and Sr. were arrested for assault (Miss. Code Ann. § 97-3-7), disorderly conduct: failure to comply with command of law enforcement (Miss. Code Ann. § 97-35-7), and resisting/obstructing arrest (Miss. Code Ann. § 97-9-73). Wade Jr. was additionally charged with disturbance of family (Miss. Code Ann. § 97-35-11). Both Wade Jr. and Sr. were convicted of all charges before the Hattiesburg Municipal Court on or about November 20, 2013. Exhibit "C." They perfected appeals to the Forrest County County Court. Wade Jr.'s charges were

dismissed on appeal as a result of miscommunication with the officers' trial subpoenas. Wade Sr. died prior to his appeal being adjudicated on the merits.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010)(citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

"Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## **LAW**

This court recently articulated the law governing qualified immunity in *Jordan v. Wayne County, Mississippi*, 2:16-CV-70-KS-MTP, 2017 WL 2174963, at *2 (S.D. Miss. May 17, 2017). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L.Ed. 2d 565 (2009). "Although nominally a defense, the plaintiff has the burden to negate the defense once properly raised." *Poole v. Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

There are two steps in the Court's analysis. First, the Court determines whether the defendant's "conduct violates an actual constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Second, the Court must "consider whether [the defendant's] actions were objectively unreasonable in the light of clearly established law at the time of the conduct in question." *Id.* The Court may address either step first. *Pearson*, 555 U.S. at 236. "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Brumfield*, 551 F.3d at 326. The Court "applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). Each Defendant's "entitlement to qualified immunity must be considered on an *individual* basis." *Randle v. Lockwood*, No. 16-50393, 2016 U.S. App. LEXIS 20326, at *11 n. 7, 2016 WL 6652702 (5th Cir. 2016)(citing *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007)).

I.  **Plaintiffs' Fourth Amendment Procedural Due Process claims are barred by the independent intermediary doctrine and are unsupported by the evidence.**

It is unclear what, if any, procedural due process claims Plaintiffs assert in their Complaint. See Complaint, [Doc. #1]. Plaintiffs' Complaint does not use the words false arrest or malicious prosecution. *Id.* The Complaint, however, alleges the arrests were "illegal" and made without probable cause. *Id.* at 5. Plaintiffs go on to state they were unlawfully seized without due process. *Id.* at 6. Paragraphs 9 and 26 of the Complaint suggest Plaintiffs are only asserting claims for excessive force. Defendants move to dismiss any procedural due process claims out of an abundance of caution.

The facts of this case are similar to the facts in *Rollins v. Hattiesburg Police Dept.*, 2:14CV61-KS-MTP, 2015 WL 4276386 (S.D. Miss. 2015), in which the plaintiffs were originally convicted before the Hattiesburg Municipal Court, but their convictions were later overturned on appeal before the Forrest County County Court. This Court stated in *Rollins* that

> The Fifth Circuit has held that "'if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation' for the Fourth Amendment violation." *Jennings v. Patton,* 644 F.3d 297, 300–01 (5th Cir. 2011)(quoting *Cuadra,* 626 F.3d at 813). The chain of causation remains broken notwithstanding a subsequent dismissal of criminal charges. *See Shields v. Twiss,* 389 F.3d 142, 144–45, 150 (5th Cir. 2004) (applying the independent intermediary doctrine where the plaintiff was indicted by the grand jury and the prosecuting authority later dismissed the charges); *Allen v. Jackson County, Miss.,* No. 1:12cv57, 2014 WL 940270, at *1, 10–11 (S.D. Miss. Mar. 11, 2014)(dismissing Fourth Amendment claims pursuant to the doctrine given the existence of judicial determinations favoring the plaintiff's arrest even though several criminal counts were ultimately dismissed on directed verdict). However, the chain of causation leading to a constitutional violation remains intact if it can be shown that the defendant withheld relevant information from the independent intermediary or that the intermediary's deliberations were in some other "way tainted by the actions of the defendant." *Hand v. Gary,* 838 F.2d 1420, 1428 (5th Cir.1988).

This Court determined that the convictions by the Hattiesburg Municipal Court, an independent intermediary, supported the arrests of the plaintiffs for this crime and "br[oke] the chain of causation for false arrest...." *Rollins*, 2015 WL 4276386 *8-9 (quoting *Craig v. Dallas Area Rapid Transit Auth.*, 504 Fed. Appx. 328, 332–33 (5th Cir. 2012)(affirming the dismissal of the plaintiff's Fourth Amendment claim)). The Court noted that the subsequent dismissal of all criminal charges against the plaintiffs in the County Court "fail[ed] to reestablish a causal link between the subject arrests and a constitutional violation." *Id.* (citing *Shields*, 389 F.3d at 144–45, 150; *Allen*, 2014 WL 940270, at *1, 10–11.) Plaintiffs did not "affirmatively shown" what evidence the Municipal Judge relied on in finding them guilty, that the evidence "was *improperly* presented," or that the "evidence could have misled" the Municipal Judge "in making an objective judgment." *Id.* (citing *Craig,* 504 Fed. Appx. at 332–33.) Plaintiffs further "failed to show that they were somehow prevented from presenting any countervailing evidence to the Municipal Judge prior to her ruling." *Id.* (citing *Allen,* 2014 WL 940270, at *11 (providing that there was no indication the judicial officer was prevented "from being fully advised of the circumstances" regarding the subject arrests)). Wade Jr. and Sr., similarly, cannot demonstrate any impropriety on the part of the Hattiesburg Municipal Court or any misleading evidence. Their convictions on November 20, 2013, negate any causal relationship to a Fourth Amendment violation. Any such claims, to the extent they are asserted, should be dismissed.

To the extent Plaintiffs have attempted to plead a malicious prosecution claim, such a claim is barred as a matter of law. The Fifth Circuit has unequivocally stated that "malicious prosecution standing alone is no violation of the United States Constitution." *Hundley v. City of Waynesboro*, 2:16-CV-3-KS-MTP, 2016 WL 3267393, at *4–5 (S.D. Miss. June 14, 2016)(quoting *Castellano v. Fragozo*, 352 F.3d 939, 943 (5th Cir. 2003). Plaintiffs' claims of

6

malicious prosecution under § 1983, to the extent pled, must be dismissed with prejudice as this is not a violation of a federal right.

Officer Holden arrived on the scene after Officer Breland had completed Wade Jr.'s arrest. Exhibit "A." Officer Holden is not alleged to have been involved with Wade Jr.'s arrest, which occurred prior to his arrival. Any claim asserted by Wade Jr. against Officer Holden should be dismissed because it is undisputed he was not involved in his arrest. Officer Holden was justified in relying upon Officer Breland's report of what had previously transpired. *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009)(quoting *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997))("[W]here a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed.").

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004)(quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir.2001))(internal quotations omitted). Defendants are entitled to qualified immunity "if a reasonable officer in [their] position could have believed that, in light of the totality of the facts and circumstances of which [they were] aware, there was a fair probability that [Plaintiff] had committed or was committing an offense." *Id.* at 656.

Officers Holden and Breland witnessed Wade Sr. being physically and verbally resistive to their efforts to complete his arrest. Any reasonable officer would believe his actions constituted failure to comply with their commands, in violation of Miss. Code Ann. § 97-35-7,

and resisting/obstructing arrest, in violation of Miss. Code Ann. Miss. Code Ann. § 97-9-73. Wade Sr.'s action in attempting to strike Officer Breland constituted reasonable evidence of assault.

Wade Jr., by his own admission, failed to initially comply with Officer Breland's order to walk toward him and separate from the crowd. Officer Breland ordered him to come foreword, but Wade Jr. did not move and replied, "you come to me." Exhibit "D" at 57, Wade Jr. Depo. First, without consideration of the subsequent actions, any reasonable officer would accept Wade Jr.'s actions as having violated a lawful command. Officer Breland states in his deposition that Wade Jr. then shoved him, constituting assault. Exhibit "B" at 26-28. Officer Breland was justified in believing he had probable cause to arrest Wade Jr. For this additional reason, any procedural due process claim fails against Officer Breland and should be dismissed.

## II. Both Officers are shielded with qualified immunity as to Wade Sr.'s claim, and it is barred by *Heck*.

### A. *The officers are shielded with qualified immunity as to Wade Sr.'s claim.*

Wade Sr. died on February 22, 2016, as a result of health complications unrelated to this case. Wade Sr.'s testimony was not perpetuated prior to his death. Officer Breland's deposition testimony concerning Wade Sr.'s lawful, reasonable arrest is uncontroverted.

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. See *Terry v. Ohio, supra,* 392 U.S. 1 at 20–22 (1968). Further,

> "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

8

*Graham v. Connor,* 490 U.S. 386 (1989). The "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Scott v. United States*, 436 U.S. 128, 137–139 (1978); see also *Terry v. Ohio*, supra, 392 U.S., at 21 (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard").

At the time of the initial events outside the residence, those outside included Wade Jr., Wade Sr. and Susa Wade. No one remained inside the house. While Officer Breland was in the process of completing Wade Jr.'s arrest, Wade Sr. approached him on the ground and began pushing and pulling him. Wade Jr. stated in his deposition that he could not see what was occurring behind him. Exhibit "D" at 69. Susa Wade confirmed in her deposition that Officer Breland told Wade Sr. to back up multiple times, including while he was handcuffing Wade Jr. and again after he stood up. Exhibit "E" at 39. After Officer Breland confirmed Wade Sr. did not have a weapon, he instructed Wade Sr. to get on the ground, and he refused to comply. Exhibit "B" at 29. He then shoved Officer Breland, so he used his pepper spray to gain control over him, but it was ineffective. *Id.* at 29-36. Wade Sr. then ran inside the house. The only witnesses to the events inside were Officer Breland and later Officer Holden.

Both officers only used reasonable force to achieve Wade Sr.'s arrest. When Officer Holden appeared on the scene, Officer Breland was struggling to gain control over Wade Sr. Officer Breland stated in his deposition that Officer Holden attempted to grab Wade Sr.'s arm to place him in handcuffs, and, during the process, Wade Sr. punched him. *Id.* at 42-46. Officer Holden states in his report that he attempted to deliver a brachial stun in response to Wade Sr.'s violent, combative assaults. Exhibit "A." The Officers' uncontroverted descriptions of the

events show that they acted reasonable and only used the minimum amount of force necessary to secure Wade Sr.'s arrest.

The officers used a reasonable amount of force, and their actions are shielded with qualified immunity. Wade Sr. bears the burden of negating the defense of qualified immunity. *Poole v. Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). Wade Sr. has passed away, and there were no other witnesses to his arrest inside the home. He cannot set forth any evidence that contradicts the reasonableness of the officer's actions inside the home, and his claim should be dismissed.

### B. *Officer Breland's use of pepper spray was reasonable.*

Officer Breland's actions in attempting to use pepper spray to gain compliance and control over Wade Sr. was reasonable, shielding Officer Breland with qualified immunity. Even if qualified immunity were not available, Wade Sr. has alleged at most a *de minimus* injury. "To state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis*." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)(stating *de minimis* uses of force are excluded from constitutional recognition).

Wade Sr. was evaluated at Forrest General Hospital after his arrest, but he did not seek treatment for any injury related to being pepper sprayed. Many courts routinely find such allegations to state at most a *de minimis* claim. *See Stone v. Damons,* 252 F. App'x 581 582 (5th Cir. 2007)(per curiam)(affirming summary judgment dismissing Eighth Amendment case where officer used pepper spray on plaintiff resisting arrest); *Bailey v. Turner*, 149 F. App'x 276, 278 (5th Cir. 2005)(per curiam); *Skinner v. Roach*, 4:05CV024DB, 2007 WL 2579951, at *1 (N.D. 2007)(finding that plaintiff failed to allege anything other than a minor injury where his eyes

were washed out after being sprayed at clinic); *Caston v. Harris*, 4:12CV32-A-V, 2013 WL 2404013, at *3 (N.D. Miss. 2013)(dismissing claim based on pepper pray because it did not result in notable harm); *McDowell v. Wilkinson County Correctional Facility*, 5:08CV279-DCB-MTP, 2008 WL 5169632, at *5 (S.D. Miss. 2008); and *Carroll v. King*, 4:10CV78-A-A, 2013 WL 1182994, at *4 (N.D. Miss. 2013).

Wade Sr. was verbally and physically combative. He assaulted Officer Breland, and Officer Breland's use of pepper spray was reasonable under the circumstances. Wade Sr. has no evidence of injury as a result of being pepper sprayed, and any claim based on its use states, at most, an uncognizable *de minimus* injury that should be dismissed.

   C.  *Wade Sr.'s claims are barred by* Heck.

Wade Sr.'s claims are further barred pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court held that a successful civil rights action would necessarily imply the invalidity of a plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court. The Fifth Circuit has held that claims of excessive force are barred under *Heck* by convictions such as battery of an officer. *See e.g. Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000); *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996). The Supreme Court stated in *Heck*,

> a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would,

> the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-487.

In this case, Wade Sr. died after filing his appeal to County Court. Exhibit "C." There was no adjudication on the merits of the criminal charges. Filing the notice of appeal did not constitute an acquittal or other action that "declared invalid" his conviction for assault on a police officer. Pursuing his claim in this case necessarily calls it into question and seeks to invalidate his prior conviction, which constitutes a collateral attack prohibited by *Heck*.

### III.    Officer Breland is shielded with qualified immunity.

Upon arrival at the scene, Officer Breland was faced with verbally and physically resistive suspects. Officer Breland's actions and use of force were necessary in response to the Wade Jr. and Sr.'s violent resistance. He only used the minimum amount of force necessary to affect their arrests.

To overcome qualified immunity on a claim of excessive force, Plaintiffs must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg,* 564 F.3d 379, 382 (5th Cir. 2009). Neither Wade Sr. nor Wade Jr. can show that Officer Breland's actions were clearly excessive and clearly unreasonable.

When Officer Breland made contact with Wade Jr., he instructed him to separate from the crowd multiple times. Wade Jr. refused to comply with his verbal commands, so Officer Breland attempted to escort him away. Wade Jr. became physically violent and shoved Offer Breland. Officer Breland then performed a straight arm bar takedown in order to gain control over Wade Jr. Officer Breland's actions were reasonable and necessary to gain control over Wade Jr. to achieve his arrest. Officer Breland's actions were measured and ascending in response to Wade

Jr.'s verbal and physical resistance. *See Galvan v. City of San Antonio,* 435 Fed.Appx. 309, 311 (5th Cir. 2010)(explaining that the use of force was reasonable when it involved "measured and ascending responses" to a plaintiff's noncompliance); *Poole v. City of Shreveport,* 691 F.3d 624 (5th Cir.2012). This situation was "tense, uncertain, and rapidly evolving," and the Officer Breland's decision to use force to restrain Wade Jr. was objectively reasonable. *Graham,* 490 U.S. 386, 396, (1989).

The Fifth Circuit's analysis in *Poole* was guided by the factors the Supreme Court identified in *Graham,* 109 S.Ct. at 1872, i.e., (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to police officers or civilians; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the scene. *See Newman v. Guedry,* 703 F.3d 757, 761 (5th Cir. 2012)("Some relevant considerations include 'the severity of the crime at issue, whether the suspect pose[d] an immediate threat to safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight."). The amount of force employed by Officer Breland was in response to Wade Jr. and Sr.'s physical resistance to arrest and assaults, clearly necessitating the amount of force used. Officer Breland's force was extremely measured. Aside from the minimal use of chemical spray, Officer Breland did not use any weapon or other mechanism beyond his hands, which both Wade Jr. and Sr. used against him. Compare *Carroll v. Ellington,* 800 F.3d 154, 176 (5th Cir. 2015), where the court found that several officers acted reasonable when they used escalating force to try and restrain a suspect actively resisting arrest. Specifically, the court upheld a holding of qualified immunity in a case where officers (a) repeatedly struck the suspect on the leg with a hickory stick, (b) then kicked him in the stomach, (c) tackled him, (d) struck him with their fists, and (e) finally tasered him several times. See also *Orr v. Copeland,* 844 F.3d 784 (5th Cir.

13

2016)(officer actions neither excessive nor unreasonable where suspect ignored officers verbal commands and initial efforts to restrain him, resulting in deployed malfunctioning taser, kicks, punches and hammer strikes).

Defendants' police tactics expert, Mark Dunston, states in his attached affidavit that Officer Breland acted in accordance with his training, the policies and procedures of the Hattiesburg Police Department and in accordance with generally accepted law enforcement standards. He states,

> After verbal direction did not work, Officer Breland attempted what is commonly referred to as empty-hand control techniques by grabbing Wade, Jr.'s wrist for control. Wade, Jr. chose to escalate the confrontation by physically resisting Officer Breland's efforts. In response, Officer Breland took Wade, Jr. to the ground. As a law enforcement trainer who has trained thousands of law enforcement officers how to react in such a situation, I have instructed those I have trained to perform in a manner similar to what Officer Breland performed. A subject who an officer is attempting to control resists, the officer should take the person to the ground for better control and handcuffing. This is what Officer Breland did in this incident. Once Wade, Jr. complied with the arrest process and Officer Breland placed Wade, Jr. in handcuffs, Wade, Jr. stopped resisting and no more force was used.
>
> ***
>
> It is my opinion that at all times throughout this incident, Officer Breland's and Officer Holden's actions were dictated by both of the Wades' resistive and aggressive actions. Had either Wade chose to comply with verbal directions, and then low level physical control techniques, the officers would not have had to take either to the ground for control and handcuffing. Both officers involved in this incident, in my opinion as a law enforcement executive and as a law enforcement trainer who has instructed the very techniques applied in this incident, acted in a manner consistent with what I or another officer would do in similar circumstances. Giving this incident as a training scenario in one of my training presentations would result in me instructing students to perform likewise.

Exhibit "F."

Officer Breland was faced with violent and combative suspects. His response was reasonable and measured, entitling him to qualified immunity.

14

WHEREFORE, Defendants request that this Court grant summary judgment and dismiss Plaintiffs' claims.

Respectfully Submitted, this the 16th day of October, 2017.

/s/ Lane Dossett
CLARK HICKS, JR. (MSB No. 8963)
R. LANE DOSSETT (MSB No. 102927)
*Attorneys for Defendants, Demetrius Breland and Narottam Holden*

Hicks Law Firm, PLLC
211 South 29th Avenue, Suite 201 (39401)
Post Office Box 13850
Hattiesburg, MS 39404-8350
Telephone: 601.544.6770
Facsimile: 601.544.6775
Email: clark@hicksattorneys.com
 lane@hicksattorneys.com

## CERTIFICATE OF SERVICE

I, undersigned counsel, do hereby certify that I have this day electronically filed the foregoing ***Memorandum in Support of Motion for Summary Judgment*** the Clerk of the Court using the ECF system, which sent notification of such filing to all registered users, including, the opposing parties' attorney.

THIS the 16th day of October, 2017.

/s/ Lane Dossett
CLARK HICKS, JR. (MSB No. 8963)
R. LANE DOSSETT (MSB No. 102927)
*Attorneys for Defendants, Demetrius Breland and Narottam Holden*