IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

GEOGE L. WADE, JR., THE ESTATE
OF GEORGE L. WADE, SR.,
DECEASED, AND HIS HEIRS AT LAW                                   PLAINTIFFS

v.                                                    CIVIL ACTION NO. 2:16-CV-47-KS-MTP

DEMETRIUS BRELAND and
NAROTTAM HOLDEN                                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment [64] filed by Defendants Demetrius Breland and Narottam Holden. After considering the submissions of the parties, the record, and the applicable law, the Court finds that this motion is well taken and should be granted.

## I. BACKGROUND

On April 13, 2016, Plaintiffs George L. Wade, Jr., ("Wade Jr.") and the Estate of George L. Wade, Sr. ("Wade Sr."), Deceased, and his Heirs at Law (collectively "Plaintiffs") filed this action against Defendants City of Hattiesburg and Officers Demetrius Breland ("Breland") and Natrottam Holden ("Holden") (collectively the "Officers"). This action arises out of the alleged use of unreasonable force by the Officers against the Plaintiffs, which occurred on April 16, 2013. The claims against the City and the Officers in their official capacity have been dismissed with prejudice. The only claims that remain pending on Plaintiffs' claims for constitutional violations under 42 U.S.C. § 1983 against the Officers in their individual capacities.

On April 16, 2013, Breland responded to a domestic disturbance complaint at Plaintiffs' residence. He first encountered Wade Jr. among a crowd of people in front of the house. When

asked to step away from the crowd to talk, Wade Jr. repeatedly refused. Breland grabbed his wrist to pull him towards his patrol unit, and Wade Jr. pushed him away. Breland then took him to the ground and attempted to handcuff him. Wade Sr. intervened and tried to push Breland off his son. Eventually, Wade Jr. was handcuffed and placed on the ground near the patrol car.

Breland then confronted Wade Sr., who refused to comply with orders to get on the ground. Breland tried to grab him but was pushed away. He then used his pepper spray against Wade Sr., but it was not effective. Wade Sr. then fled into the house, and Breland pursued. Holden arrived on the scene shortly after.

Inside the house, when Breland reached him, Wade Sr. began punching him and resisting arrest. Holden followed them inside, and shortly afterwards, Breland was able to subdue Wade Sr. and place him under arrest.

## II.  DISCUSSION

### A.   Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is

sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

Plaintiffs have conceded that they cannot proceed with their claims against Holden or with their claims of unreasonable use of force against Breland for his use of pepper spray against Wade Sr. Defendants argue that their other claims are barred by qualified immunity.

### B. Qualified Immunity

Qualified immunity protects government officials sued in their official capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)). This doctrine, where applicable, is a bar to

suit altogether "rather than a mere defense to liability." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985)). The Supreme Court has explained that "the driving force behind the creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." *Id.* at 231-32 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n.2, 107 S. Ct. 3034, 97 L.Ed.2d 23 (1987)) (internal quotations omitted and alteration in original).

There are two steps in deciding whether qualified immunity applies. *Id.* at 232. "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001)) (internal citations omitted). If the plaintiff can establish this, then "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* If both steps are satisfied, qualified immunity does not apply.

### C. Wrongful Arrest

Plaintiffs purport to make due process claims under the Fourth Amendment that are based on the allegedly illegal arrests of Wade Jr. and Wade Sr., which they argue were without probable cause. There is no due process clause of the Fourth Amendment. Wrongful arrest, however, is a claim under the Fourth Amendment, which protects against illegal seizures. *See Albright v. Oliver*, 510 U.S. 266, 269, 114 S. Ct. 807, 127 L.Ed.2d 114 (1994) (plurality). "[A]n allegation of arrest without probable cause must be analyzed under the Fourth Amendment without reference to more general considerations of due process." *Id.* at 282 (Thomas, J., concurring). However, even if this claim were correctly labeled as a wrongful arrest claim, it would still fail as it is undisputed that both Wade Jr. and Wade Sr. were convicted by the Hattiesburg Municipal Court, with Wade Jr.'s charges eventually dismissed on appeal and Wade Sr. dying prior to the adjudication of his appeal.

"[I]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for the Fourth Amendment violation." *Jennings v. Patton*, 644 F.3d 297, 300-01 (5th 2011) (quoting *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (internal quotations omitted). However, "[t]he chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Id.* at 300. "The chain of causation remains broken notwithstanding a subsequent dismissal of criminal charges." *Rollins v. Hattiesburg Police Dep't*, No. 2:14-CV-61-KS-MTP, 2015 WL 4276386 at *8 (S.D. Miss. July 14, 2015) (citing *Shields v. Twiss*, 389 F.3d 142, 144-45, 150 (5th Cir. 2004).

In *Rollins*, this Court held that the plaintiffs' convictions in the Hattiesburg Municipal Court broke the chain of causation for their wrongful arrest claim under the Fourth Amendment, notwithstanding the subsequent dismissal of their charges on appeal. *Id.* at *9. Though Plaintiffs admit that this precedent bars Wade Jr.'s claim, they argue that Wade Sr.'s claim survives because the charges were abated against him due to the rule of abatement ab initio,[1] which applies because he died prior to the adjudication of his appeal. Plaintiffs, however, offer no legal support for the contention that abatement under this rule reestablishes the chain of causation for a Fourth Amendment claim. The Court sees no distinction between a dismissal on appeal and an abated conviction. Had Wade Sr. survived and his appeal adjudication, no outcome of his appeal would have reestablished the chain of causation, absent a showing that the proceedings before the Municipal Court were somehow tainted, which has not been alleged here. The Court sees no reason to hold that the abatement that resulted from his death has an impact on his claim now that

---

[1] The Court assumes without deciding that, for purposes of this analysis, this rule applies.

5

could not have resulted had he lived.  The Court therefore finds that the independent intermediary doctrine bars any claim of wrongful arrest by both Wade Jr. and Wade Sr.

Therefore, because Plaintiffs cannot show that they can meet their burden in establishing a constitutional violation under the Fourth Amendment for wrongful arrest, the Court will **grant** the Motion for Summary Judgment [64] with respect to these claims, and Plaintiffs' § 1983 claims for wrongful arrest will be **dismissed with prejudice**.

### D.     Excessive Use of Force

To make out a claim for excessive use of force under the Fourth Amendment, Plaintiffs must show "(1) an injury that (2) resulted directly and only from the use of force that was excessive in the need, and (3) the use of force was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008).  Whether use of force is objectively unreasonable "depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." *Id.*  The Court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 43 (1989)).

#### 1.     Wade Sr.

Because Plaintiffs have conceded that they cannot proceed on an excessive use of force claim for Breland's use of pepper spray against Wade, Sr., the only use of force at issue is that occurring after Wade Sr. retreated into the house and Breland pursued him.  The only evidence of the circumstances surrounding this use of force is the testimonies of Breland and Holden.  Therefore, the only analysis the Court can undertake as to Wade Sr.'s excessive force claim is

based on Breland's and Holden's narratives of the events after he followed Wade Sr. into the house.[2]

In Breland's account, after Wade Sr. ran into the house, he pursued and caught up to him near the bathroom door. (*See* Breland Depo. [64-2] at 36:25-37:12.) They went into the bathroom, and Breland attempted to grab Wade Sr., who began punching him. (*See id.* at 37:25-38:6.) Breland responded with open hand strikes. (*See id*. at 38:10-12.) Despite Breland's order to stop resisting, Wade Sr. remained "combative." (*Id*. at 38:17-19.) In his police report, Holden stated that, when he followed Breland inside, he found him "struggling to place . . . George Wade Senior into custody." (Incident Report [64-1] at p. 4.) He noted that "Wade was swinging his hands towards Officer Brelands [sic] face" and "Breland was giving Wade verbal commands to stop fighting." (*Id.*) Wade Sr. continued his struggles even after he was brought to the floor until he finally complied with the officers' commands to stop resisting and Breland was able to place him in handcuffs. (*See* Breland Depo. [64-2] at 46:24-47:7; Incident Report [64-1] at p. 5.)

Given these circumstances, the Court must find that Plaintiffs have not met their burden in establishing that the force used against Wade Sr. was excessive or objectively unreasonable. The uncontroverted evidence shows that Wade Sr. was actively resisting arrest and that the officers engaged him with nothing but open-handed strikes, eventually grappling him to the ground and placing him in handcuffs. Under these circumstances, the force employed by Breland was not excessive or objectively unreasonable. As such, Plaintiffs have not established that he violated Wade Sr.'s Fourth Amendment right against excessive use of force. Therefore, the Motion for

---

[2] Plaintiffs invite the Court to discredit Breland's testimony of the events because of events occurring before and after Wade Sr. and Breland entered the house. The Court cannot consider the credibility of the evidence before it on summary judgment. Even if it could, if Breland's testimony were discredited, the Court would then be left with no evidence as the circumstances surrounding the use of force and could not analyze its objective reasonableness. Furthermore, though Wade Sr.'s resulting injuries may indicate that force was used, they are not evidence of whether that force was objectively reasonable.

Summary Judgment [64] will be **granted** with respect to this claim, and it will be **dismissed with prejudice**.

        2.       **Wade Jr.**

The only evidence of the force used against Wade Jr. before the Court is Breland's deposition testimony and incident report.[3] Therefore, this is the version of events that the Court must use in order to determine if Breland used an excessive amount of force.

When Breland arrived at the house, he repeatedly ordered Wade Jr. to step away from the crowd and come speak with him. (*See* Breland Depo. [64-2] at 25:21-26:12.) Wade Jr. refused to comply. (*See id.*) After "numerous attempts of [Breland] asking him to step away to [his] unit" to talk, Breland grabbed Wade Jr.'s wrist in order to pull him towards the patrol unit. (*Id.* at 26:16-19.) Wade Jr. resisting, pushing Breland and jerking away as if to assault him. (*See id.* at 27:6-21.) Breland reacted to Wade Jr.'s actions by doing a "straight arm bar takedown" and bringing him to the ground, placing a knee on his back to keep him in place. (*Id.* at 27:24-28:2.) He attempted to handcuff him when Wade Sr. intervened. (*See id.* 28:4-18.) Eventually, Breland was able to handcuff Wade Jr. despite his father's actions, and no other force was used against him.

Based on this account, which has Wade Jr. refusing to comply with order and assaulting Breland, the Court does not find that Plaintiffs have met their burden to establish that Breland's use of force was excessive or objectively unreasonable. Breland initially used force in grabbing Wade Jr.'s wrist to pull him to the patrol unit only after Wade Jr. repeatedly failed to comply with his orders. When Wade Jr. resisted and pushed him, Breland used force against to bring him to the ground. Under the circumstances, Breland's actions were neither excessive nor objectively

---

[3] Plaintiffs cite to various portions of Wade Jr.'s deposition to support their version of the events, but have not submitted those portions of the deposition as evidence or made them part of the record in any way. The Court cannot consider evidence not in the record.

unreasonable. Therefore, Plaintiffs have not met their burden in establishing a constitutional violation of Wade Jr.'s right against excessive force. The Motion for Summary Judgment [64] will be **granted** as to this claim, and it will be **dismissed with prejudice**.

### III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment [64] is **granted**.

SO ORDERED AND ADJUDGED, on this, the 18th day of December, 2017.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE